Good morning, your honors. May it please the court. Brian Isaac, as you know, I represent the plaintiff appellant in this matter. I guess the dispositive issue from our perspective is, right, where's the metal? It's the old, I guess, Wendy's commercial, where's the beef? And here's the issues, where's the metal? And when I was thinking about how I was going to try to propose this, I wanted to try to do it a little bit of a different way. If you bear with me, I think you'll see where I'm going. Lawyers such as myself and my adversary are always trying to figure out how judges actually think because that's our job. And when you read all of the, you know, books by Garner and by Scalia, they talk about this tripartite way of thinking, which is purely logical, right? You have a major premise, you have a minor premise, and the conclusion flows from itself. So for example, I'm a professional basketball player. You're all basketball fans. You watch me play. You think I'm horrible. But the major premise in the lawsuit is every player in the NBA is a great basketball player. Brian Isaac is in the NBA. The conclusion that flows, therefore, is Brian Isaac's a great basketball player, even if you think I'm terrible. Let's apply that here. The major premise in the case, and the reason that the plaintiff was subjected to this contraband confinement was because he allegedly had metal in his rectum, which was thought to be a razor. Very, very bad situation. Very, very dangerous. Something that would authorize this type of retention, which I think is basically- Sorry, you say allegedly had, but the x-ray makes it hard to imagine any other conclusion, right? And I want to go right there. That hits the nail right on the head. So here's my paradigm, Judge. If the major premise is everyone who goes to the contraband room will eventually excrete metal because they have to, and plaintiff is in the contraband room, and the minor premise is plaintiff never excreted the metal, then the conclusion to be drawn is it was never there, and that was his claim all along. I looked at those x-rays just like you did. They look devastating, 100%. Big metal, they have one x-ray after another, but that situation is just not a possibility. I don't think it's possible. Why is it not possible? Why isn't it possible that he did excrete the metal, and it was not found? Because it happened at a time that he was not being surveyed, and he made other accommodations. Because the very way that the rules are set up, and as you know, most of our Eighth Amendment claim is based upon the severity of these rules, is that that can't happen. It just can't happen. As a matter of fact, I'm going to prove it to you. The only thing that my adversary said in his brief, and his brief is great. He's a terrific writer. I wish I could write like that. This is on page 33 of his brief. I'm going to read it verbatim. Nor does DOCCS's ultimate inability to find plaintiff's weapon change the result. There are various plausible explanations for the disappearance of the weapon, and this fact alone does not raise a genuine issue. As Keller testified, plaintiffs somehow quote, got the contraband out without a correction officer seeing him. Plaintiff himself testified that quote, sometimes people leave their posts close quote, while guarding the contraband watch room, for instance, when alarms sounded. There was evidence that a small item like razor blade could have been disposed by shoving it down the drain in the watch room sink. And even if plaintiff excreted the metal object, it simply may not have been discovered by the correction officer tasked with searching plaintiff's large deposit of fecal matter on October 4th, 2017. If this is your argument, doesn't that mean that you also have to allege that the prison officials also were acting in bad faith and believe it in saying that there was putting him, your client, under surveillance on a bad faith belief that he had contraband? Yes. In other words, that they knew that he didn't, but they did anyway. Right. So we have a subjective component and an objective component. I have more arguments than that, but let me just deal with this. The answer is yes. If he, if there's an inconsistency between a temporal fact that occurs later and temporal facts that occur before, our position is that the later temporal fact governs in a summary judgment motion because the movement on summary judgment has the burden of eliminating questions of fact. But wasn't there policy to remove prisoners from that, the particular cell where they look for contraband when they have, and this is a very graphic case, so I apologize, when they have two bowel movements within sequential and that they are clean, they don't have contraband or the contraband comes out. In this case, they were doing x-rays when your client allowed. There were times he refused x-ray when he was able to have a bowel movement and there was the issue of the liquid diet and him not going for 17 days, which is quite dangerous. But the point is, it seems like with respect to when they did release him, that they did so in accordance with their policy, which was one bowel movement, no contraband found, a subsequent bowel movement also clean, and then an x-ray that no longer showed. So if I may, I don't like disagreeing, but I think that that's not 100% right. If you look at the directive, you're talking about Directive 491E13. So there are, the general rule says, and I'm quoting, inmates shall remain isolated for a period not to exceed 48 hours unless, one, the defecation containing contraband occurs in which the inmate will be retained until the two negative defecations occur. I don't think anybody thinks that one applies. I think this is the one you're referring to, Judge. Quote, two, two negative defecations do not occur within 48 hours, in which case the inmate will be retained until two negative defecations occur, or three, this is what we claim applied, a radiological detention search conducted pursuant to Section 3-1 of this directive indicates the presence of contraband items which remain in the inmate's body. In this case, the temporary isolation may continue for up to seven days with the written approval of the superintendent or designee. We said three applied. The magistrate said we were wrong because the x-ray that was taken wasn't a mandatory one, it was one that was voluntary. But even if you use Subdivision 2, the magistrate's decision itself concedes that on August 22 he had two defecation events with no metal coming out should have been released there. He was there until October 4. So that was one of the arguments that we made, that under that, I see my time's up, can I continue? I'm sorry, I just, I asked for permission. So in that situation, we say his detention should have ended on August 22. Wasn't there an x-ray that showed that the object was still there? They say there is, well, there are photographs. Well, they say we, well, we have it as an exhibit. We have it, we have tons of x-rays, and the x-rays look, I mean, I can read x-rays, they look like there's metal there. What I'm suggesting to the court is that those x-rays are fundamentally inconsistent with an October 4 event where the plaintiff defecates twice and suddenly they take another x-ray and it's not there. I am telling you that cannot happen. There is no explanation for that. Nobody said anything about that. Even their expert doctor, I never said anything about that at all because I don't think it can happen. I think that's an impossibility, and if there's an impossibility on a summary judgment move-in can't win. Can I just have one more minute? You've reserved three minutes. May it please the court. Frederick Brody for appellees. There is no genuine dispute that multiple x-rays showed a sharp metal object, probably a razor blade, concealed in plaintiff's rectum. Defendants therefore reasonably believed that plaintiff had a concealed weapon. That's why plaintiff was on contraband watch. Returning plaintiff to the general population would have placed other incarcerated individuals and dock staff at risk. Because the defendants reasonably believed that plaintiff was concealing a weapon, they lacked the culpable state of mind necessary for an Eighth Amendment violation. An x-ray tech and a nurse read the first x-ray and said the object appeared to be a razor blade. Consulting radiologists confirmed the object's presence. When x-rays showed the weapon was no longer there, the plaintiff was released from contraband watch. Now the failure to recover the weapon that opposing counsel references makes no difference. Defendants reasonably believed the weapon was there. They had the x-rays. They saw them. They had consulting radiologists. Thus, they lacked the mental state for cruel and unusual punishment. They were acting reasonably to protect the other inmates and to protect dock staff. Why didn't the contraband watch end after the first August 22nd battle movement that showed no object? Because there was a fresh x-ray from August 21, the day before, showing the object was there. So in light of that fresh x-ray, they continued the contraband watch. Now Directive 4910, on which plaintiff relies, did not require docs to terminate the contraband watch after seven days. First of all, a breach of state prison guidelines, like the Directive, which is not a regulation, it's a guideline, does not give rise to a federal claim under Section 1983. Second, at all times between August 4 and October 4, there was either a recent x-ray showing the weapon or a refusal by plaintiff to be x-rayed. And August 22nd was a case where there was a recent x-ray from the day before showing the thing is there. Now docs reasonably interprets the guidelines in Directive 4910 as not requiring release to the general population when an individual is reasonably thought to be concealing a weapon. That's consistent with the Directive's underlying purpose of promoting safety and security. And there's no time frame on that regulation? Well, again, it's not a regulation. And the time frames in there are, in docs view, advisory. Now in this case, when you see the weapon in there, it would be, and I think the testimony of the superintendent was, it would be foolhardy. It's something along those lines. It would be that seven days have elapsed when you have the x-ray from the day before showing the things inside it. Now plaintiff wrongly applies the new or should have known standard to the Eighth Amendment. New or should have known is ordinary negligence. The Eighth Amendment standard is deliberate indifference. This record shows the opposite of deliberate indifference. Plaintiff's health was closely monitored. Medical staff visited plaintiff on all but three days, often more than once a day. Other docs personnel visited plaintiff more than three times a day. And a watch officer was assigned to observe plaintiff one-on-one. But let me ask a question about a kind of an ancillary issue. I mean, assuming we agree with you that his retention for 61 days in the contraband unit was appropriate and adequately supported by the record, I was still troubled that he seems to have been denied, alleged he was denied basic hygiene materials, you know, toothbrush, toothpaste, hot water, you know, unable to wash, which seems to be really unrelated and unnecessary for his effective confinement in the contraband room. The magistrate judge, I think, focused on a five days or one day, but I mean, going without brushing your teeth or washing for, you know, over two months seems to me unnecessary and troubling. Could you address that concern? Yes. I mean, as your Honor recognizes, the logbook records that plaintiff was provided with hot water and soap on five occasions and toothpaste. Five occasions in 61 days. That's what the logbook records. Now, there may have been other instances that someone didn't write down. The purpose of the logbook was to record, really, plaintiff's defecation. You know, that's what the contraband watch was. Mr. Johnson alleged, though, that he got them not at all, which seems to be disproven by this. But still, it looked like you get to wash your mouth and brush your teeth only upon request and teeth don't do so well. Right. Well, I'm not asking the court to draw an inference in our favor, but the record does show that, as your Honor recognizes, soap, water, a toothbrush, and toothpaste were available upon request. That's at page 767. Plaintiff did not show that he ever requested those items and was denied them. Further, plaintiff doesn't... But the policy for the specific policy for when somebody is in the contraband room is that they're to be provided hot water and soap at least 30 minutes before a meal. It also says upon request, but it says at a minimum there are certain times in the day that they're to be provided that. They're not entitled to shower privileges unless deemed appropriate for obvious reasons. You don't want somebody... You don't want the object dropping down the drain. You don't want the object to go down the sink, which is why they cut off the water, etc. But the policy does say that individuals kept in the contraband room are to be provided these items. Can you address that? Right. And again, that's Directive 4910. We regard that at DOCSIS as advisory, and it's not really a material difference to say we're going to provide hot water, soap, toothpaste, toothbrush at particular times versus if you request them, we'll provide them. Again, there's no evidence that he requested them and was denied them. He doesn't testify to that. He says I didn't get them, which in light of the logbook, no reasonable jury would conclude. And I just... There are a bunch of different health-related, you know, the liquid diet and the various health-related allegations of clothing along that line, and I want to make a general observation on that. The construction of the roster of defendants here was really a challenge to the two tickets and not to the health conditions, because four of the defendants are in here because they either wrote in one case or processed the bed frame disturbance ticket. Two defendants, Randall and Pasiorek, are in here because they wrote or processed the x-ray altercation ticket, and the other two defendants are Shapius and Keller, who were the superintendent and deputy superintendent. Now, the people who process and write tickets are not the people who serve your meals. They are not the people who prescribe the diet. The prescription of the liquid diet, that was Dr. Ott. That wasn't these defendants. In fact, only one correction officer, low-level correction officer, was sued. That was defendant Ramirez, who testified that he took away the bed but not the mattress when plaintiff was causing a disturbance. He's the only CO. He's the only guy who was sitting there watching, and he also So that certainly wasn't long enough to give him knew or should have known, let alone this more strict standard of the Eighth Amendment of deliberate indifference. None of these defendants were shown to have deliberate indifference, and if I may just circle back to the initial issue about did the object disappear. On October 4th, plaintiff, in the morning, the notes show he had a large bowel movement, and it was the duty of a correction officer. I'll take the liberty of saying an unfortunate correction officer to go through these bowel movements with a tongue depressor, and it's reasonable to think that the object was in there and was missed. Thank you, counsel. We'll hear about it. Thank you, your honor. Talking about the hygiene issue, I know that was brought up before. I read the record, this is 1241, it's saying the plaintiff received soap and water, soap and hot water on five occasions, a toothbrush and toothpaste on only three occasions during the 61-day period, and by my math, I'm not great at math, but based upon the regulation itself, he was entitled to basic hygiene on 305 occasions. Does the record reflect that he requested those items? The record reflects that he complained to every single person about his condition. There's nothing about a specific toothbrush, but it's on I think 12... Yes, that he complained, but that he... About his condition. No, no, no, I didn't say that. What he said is that his testimony was that he complained every time he saw any prison official about his condition, and that's summarized, your honor, with the page references on 1277 of the Memorandum of Law. It's there. But he complained about his overall condition? Yes, yes. Okay. Yes. I know that there's in the record a notation that he testified that one time a nurse gave him a toothbrush because he complained, but that was the only time I saw... That's correct. Okay. That's right. I didn't want to overstate it. That's right. That's the only time I saw a complaint about that. I mean, complaining overall about being in the contraband room and the conditions of the I complained to this person that I didn't get water and soap this morning, or I didn't get toothbrush. That's what I meant. Right. I understand. The way I read his testimony was, and I read his deposition a couple of times, was that he basically... Obviously, it was a contentious deposition, as you know, because you read it as well. He testified, I don't know people, but I know faces. That's what he actually said. And he said he complained generically to everyone about his condition, but part of the condition he was complaining about would have encompassed everything that he was having, whether it was a deprivation of food, whether it was inappropriate clothing, whether it was the fact that he said he was starving. And there's some evidence here dealing with the fact that plaintiff wasn't eating. If you look at, I think it's 1283 of the record, we actually have a chart showing that he was eating his meals and he was starving. There's one thing I forgot to say that I think is critically important, and that's Dr. Ott's affidavit. I'm sorry. The argument by my adversary just isn't fair. To sit there and make a Rule 26 and 37-1 violation by saying, by not disclosing a key witness, and then saying, well, I told you that anybody there, anybody who the plaintiff saw in his travels is fair game, that's just not fair. I may lose the case, but that's not what the rules were designed to do. And in a situation such as this one, where you're using this witness, if you look at the four factors that my adversary actually used, every one of them goes in our favor. So that wasn't a fair- But didn't they say that any and all correctional and medical personnel identified in the medical record may provide testimony? They did. So it wasn't just anyone there. It was medical personnel, and he was the treating physician, basically, while your client was in the contraband. Well, my client said he didn't actually know his name, and let me just turn that around if I can. If I was the plaintiff, right, and I said, I reserve the right to call any witness in the cell or in the area where my client was, and suddenly I came up with affidavits from three people, I don't think that's enough for me. I don't think it should be enough for them either. This is more specific, though. It was medical personnel identified in the plaintiff's medical record, and he was the key, Dr. Ott was the key person identified in the medical record, right? I understand, but your honor, he wasn't identified. So if he's a key person, to me, the attorney general would have identified someone. You don't not identify key people. You identify them if they're favorable to your case, and the inference to be drawn is they were just going to rely on the records. Was your client shocked that Dr. Ott was a witness when he was the one that ordered the liquid diet, and that was, you know, a central piece of his complaint, was that he wasn't adequately fed because he was placed on liquid diets. They claim to essentially force him to have bowel movements because they believed he was withholding bowel movements, but does that really shock your client or his counsel that Dr. Ott would be a central witness in this case? Well, my client would be shocked by everything, but let's talk about the attorneys. The answer is no, we knew he was a witness. There's actually a form there where he's trying to explain irregularities in the record, but again, if you don't disclose someone, the fact that they're not disclosed leads to an inference that they're not going to be a key witness as this was where you submit an affidavit. Just because you know that someone's there doesn't obviate the disclosure obligations that in here in the Federal Rules of zumwalt.